CASE 81—ACTION BY FRANCIS M. O'NEIL AND OTHERS AGAINST THE
MUTUAL LIFE INSURANCE COMPANY OF KENTUCKY FOR A PAID-UP
POLICY.—Nov. 17.

## Mutual Life Ins. Co. of Ky. v. O'Neil, &c.

APPEAL FROM MARION CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND DEFENDANT APPEALS. REVERSED.

INSURANCE—FORFEITURE—PAID-UP POLICY—DEMAND—TIME—LACHES
—WITNESSES—TRANSACTION WITH DECEASED AGENT.

Held:   1. Under Civil Code, sec. 606, providing that no person can
testify for himself as to a transaction with one who is dead, an
insured who was a party to an action to compel the insurance
company to issue a paid-up policy was not entitled to testify
as to a conversion between himself and an agent of the insur-
ance company who had since died.

2. Where a life insurance policy provided that if it should be forfeited
the insured should be entitled to a paid-up policy on demand
within thirty days after forfeiture for the equitable value of the
original policy, time was not of the essence of such agreement,
and insured was entitled to a paid-up policy if demanded within
a reasonable time.

3. Where an insured made no demand for the issuance of a paid-up
policy until more than seven years had elapsed after a forfeiture
of his original policy, and no suit was brought to compel the
issuance of such paid-up policy until nearly seventeen years had
elapsed after the right to such policy accrued, such right was
barred by laches.

PROCTOR K. McELROY, HENRY W. PRICE AND JNO. J. M.
HENRY, ATTORNEYS FOR APPELLANT.

C. S. HILL, ATTORNEY FOR APPELLEE.
    (No briefs; record can not be found.)

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

On April 27, 1870, the Southern Mutual Life Insurance
Company of Kentucky, appellant's predecessor, issued to

Francis M. O'Neil a policy insuring his life in the sum of $2,500 for the benefit of his wife, Catherine E. O'Neil, and his children, payable at his death, in consideration of semi-annual premiums of $27.39 to be paid on the 23d of April and October in every year during the continuance of the policy, which contained, among others, the following condition: "In case the said assured shall not pay the said semi-annual premiums on or before 'the several days hereinbefore mentioned for 'the payment thereof, then, and in every such case, the said company shall not be liable for the payment of the sum insured, or any part thereof, and this policy shall cease and determine. Provided, that if this policy shall become null and void by reason of the violation of any of the foregoing conditions, all payments made hereon shall be forfeited to said company; but if three or more full years' premiums shall have been paid hereon, a new and paid-up policy will be issued by said company, upon demand thereof, within thirty days after the said forfeiture, for the equitable value of the original policy." O'Neil paid the semi-annual premiums as they fell due until October 23, 1883, but was unable to pay the semi-annual premium then due, and executed therefor to the company his note due in four months, which contained this stipulation: "In consideration hereof, the policy is extended until default is made in the payment of this note, when all rights and benefits secured thereby shall cease and determine without notice, and this note shall be void; but if this note shall be paid at its maturity, then the said policy shall continue in force with like effect as if the said premium were this day paid. The receipt of this date given by said company is subject to the provisions of this note.". O'Neil failed to pay the note, and the records of the company show that the policy was terminated on February 26, 1884, by reason of its non-payment.

This is shown on the cancellation blotter of the company,
giving the date when it was canceled and the reason for it.
The record also shows that notice of what had been done
was sent to O'Neil on June 25, 1884.  On August 22, 1901,
O'Neil and wife filed this suit against the company for a
paid-up policy for the equitable value of the original policy
at the time of default in the payment of premiums.  He
testified that he received no notice of the cancellation of the
policy, and that as soon as he found that he could not pay
the note, and about the time the note fell due, he delivered
his policy to T. L. Chaplin, the agent of the company at
Lebanon, where he resided, and demanded a paid-up policy;
that he did not get a paid-up policy; that he
asked Mr. Chaplin about it once or twice; that Chap-
lin said he would send it in to get a paid-up policy.  After
Chaplin's death, which occurred in 1892, the policy was
found among Chaplin's papers, and was then returned to
O'Neil.  Chaplin ceased to be agent for the company in
the year 1886.  He was the agent of the company at Leb-
anon to solicit life insurance between June, 1883, and Jan-
uary, 1886.  He had no other power or authority except
to take applications for life insurance.  The application for
the policy, which was made in 1870, was taken by T. W.
Blandford, who was then the agent at Lebanon.  The de-
fendant filed written exceptions to the testimony of O'Neil
in so far as he stated what occurred between him and Chap-
lin, on the ground that, Chaplin being dead, O'Neil could
not testify for himself as to these matters.  The court over-
ruled the exceptions.  The propriety of this ruling is the first
question to be determined.

F. M. O'Neil was a party to the contract and one of the
plaintiffs in the action.  He was therefore testifying for
himself.  Chaplin, the person with whom the transaction oc-

curred, died in the year 1892.   By section 606 of the Civil
Code no person can testify for himself as to a transaction
with one who is dead, and it has been held that the same rea-
son which excludes the testimony of a party testifying for
himself concerning a transaction with a principal who is
dead, when the testimony is offered to be given, applies
equally where the transaction was with an agent who is
dead.   Harpending's Ex'rs. v. Daniel, 80 Ky., 449, 4 R., 330;
Tarr v. Kimbrough, 17 R., 1284, 34 S. W., 528; Breckinridge
v. McRoberts, 20 R., 699, 47 S. W., 454; Knight v. Wilson,
22 R., 545, 58 S. W., 439.   The court therefore erred in over-
ruling the defendant's exceptions to this much of the testi-
mony of O'Neil.

It remains, therefore, to determine whether, without this
evidence, there is sufficient testimony in the case to sustain a
judgment.   The fact that, six years after Chaplin ceased to
be agent for the company, the policy was found among his
papers at Lebanon and returned to O'Neil, proves nothing
against the company.   In answer to the question whether
at any time he demanded of the defendant a paid-up policy,
O'Neil states in his deposition that he wrote the company
to grant him a paid-up policy, but he does not say when
this was.   He also says in another place that after the death
of Chaplin he wrote to the defendant demanding a paid-up
policy, and the company answered that the policy had not
been presented in time, and that just before he instituted
the suit he again made this demand and was again refused.
The proof for the company shows that it kept a record of its
correspondence, and the only demand shown by this record
was made in June, 1901.   The policy itself provides that a
paid-up policy will be issued upon demand thereof within
thirty days after the forfeiture.   This court has in a number
of cases held that time is not of the essence of the contract

in such cases, and that a paid-up policy may be had if demanded within a reasonable time after the default, although not demanded within the time fixed by the contract; and it has laid down the rule·that five years is a reasonable time for making the demand. Mutual Life Insurance Company v. Jarboe, 102 Ky., 80, 19 R., 1501, 42 S. W., 1097, 39 L. R. A., 504, 80 Am. St. Rep., 343; Manhattan Life Insurance Company v. Patterson, 109 Ky., 624, 22 R., 1282, 60 S. W., 383, 53 L. R. A., 378; Washington Life Insurance Company v. Miles, 112 Ky., 743, 23.R., 1705, 66 S. W., 740; New York Life Insurance Company v. Warren Deposit Bank, 24 R., 325, 75 S. W., 234. In the last case it was held that the failure to make a demand within five years defeated the right to a paid-up policy where the company simply remained silent without attempting to collect the note. In this case the defendant took no steps to collect the note, and did nothing to waive its right to insist upon the forfeit. Outside of the testimony of O'Neil as to what took place between him and Chaplin which can not be considered, there is nothing to show a demand on the company for a paid-up policy within five years after the forfeiture occurred. The only time fixed by O'Neil as that at which he wrote to them making this demand is after the death of Chaplin, which was in 1892, or more than seven years after the default. No explanation is given of the long delay, after Chaplin ceased to be agent in 1886, or even after his death in 1892, to file this suit. It is a cardinal principle of equity to refuse relief to those who have unreasonably slept on their rights. The suit was not filed for something like seventeen years after the right accrued to demand a paid-up policy, and under the rule heretofore laid down there can be no recovery.

The insured had an option to stand upon his original policy and his rights thereunder, or to take a paid-up policy for

the equitable value of his original policy. The provisions of the contract as to a paid-up policy are not self-executing. He was to demand the paid-up policy in thirty days after default in the payment of premiums if he wanted it. Although the court refuses to enforce strictly the limit as to time, and allows a demand within a reasonable time, still it must follow from the contract, on well-settled, legal principles, that, if no demand is made within the proper time for a paid-up policy, the right thereto will be deemed waived. For the policy expressly provides that on default in the payment of premiums it shall cease and determine, and unless something is done to arrest the operation of this, provision the policy is no longer in force. The insurance company must have some basis for carrying on its business with the living and settling the claims of the dead, and, as in other cases of failure to make an election, it must be presumed after a reasonable time that the insured did not elect to exercise his option to surrender his original policy and take a paid-up policy for its equitable value.

Judgment reversed, and cause remanded for a judgment as herein indicated.

Judges Paynter and Nunn dissent.