CASE 45.—ACTION BY JOHN ANDERSON AGAINST THE LOUISVILLE & NASHVILLE RAILROAD CO. FOR DAMAGES FOR BEING EJECTED FROM ITS TRAIN.—June 18, 1909.

## Anderson v. L. & N. R. R. Co.

Appeal from Knox Circuit Court.

G. W. STONE, Special Judge.

Judgment for defendant, plaintiff appeals.—Reversed.

1. Carriers—Passengers—Ejection—Action—Evidence. — In an action for ejection of a passenger, evidence of the conductor's general habit or usual disposition concerning the treatment of passengers was inadmissible.

2. Witnesses—Competency—Transaction with Person Since Deceased.—Under Civ. Code Prac. Sec. 606, subsec. 2, providing that, subject to certain exceptions, no person shall testify for himself, concerning any verbal statement of or transaction with a person since deceased, a passenger eject-

ed from a carrier's train was incompetent to testify to what took place between himself and defendant's conductor who died prior to the trial.

3. Appeal and Error—Right to Allege.—Appellant could not complain that he was not allowed to argue the case to the jury a second time after the giving of a second set of instructions, where the court offered to grant such privilege and it was declined.

4. Carriers—Transportation of Passengers—Fare—Ejection.—It is the duty of a passenger when approached by the conductor to either deliver his ticket or pay fare, and, if he refuses to do either, the conductor may then eject him from the train without insult or more force than is necessary.

5. Carriers—Passengers—Fare—Loss of Ticket.—Where a passenger, on being approached by the conductor for his ticket, stated that he had purchased a ticket and had it with him, but had misplaced it, and was then making an effort to find the ticket, it was the conductor's duty to give him a reasonable time to find it if he could before ejecting him for refusal to present his ticket or pay fare.

6. Carriers—Transportation of Passengers—Fares—Good Faith. —Plaintiff with his father boarded one of defendant's trains. The father had given plaintiff money to purchase the tickets which he did. Plaintiff had mislaid the tickets, and was unable to find them at once, and, to avoid immediate ejection by the conductor, plaintiff's father handed the conductor a $10 bill and requested him to go on taking up tickets. The conductor asked them where they were going, to which the father replied: "The tickets will show. I don't want you to take our fare out of that ten dollars." The conductor continued to take up tickets, then returned, and, on being informed that they had not found the tickets, ejected them and finally surrendered the $10 to plaintiff's sister. Held, that the handing of the $10 to the conductor did not constitute a payment of the fare, and should be considered only on the question of plaintiff's good faith in attempting to gain time to find his tickets.

GREENE, VANWINKLE & SCHOOLFIELD for appellant.

DISHMAN & DISHMAN of counsel.

## POINTS AND AUTHORITIES.

1. A passenger on a railroad train who has lost or misplaced his ticket, must be given a reasonable time within which to find it, and what is a reasonable time is a question for the jury.

Anderson v. L. & N. R. R. Co.

Hayes v. N. Y. Central R. Co., 18 Am. and Eng. R. Cases 363; L. & N. R. R. Co. v. Fleming, 14 Lea, Tenn., 128; 18 Am. & Eng. R. Cases 317; Clark v. Wilmington, &c. R. Co., 91 N. C. 506; 18 Am. & Eng. R. Cases 366; International R. Co. v. Wilkes, 68 Texas 617, 34 A. & E. Cases 331; Sou. R. Co. v. Nix, 68 Ga. 572; Robson v. N. Y. Cen. R. Co. 21 Hun. 387; Chicago R. Co. v. Willard, 31 Ill. App. 435; 1 Elliott on R. R., vol. 42 Ed., Sec. 1594; Maples v. N. Y. Cen. R. Co., 38 Conn. 557; Curtis v. Grand Trunk R. Co., 12 Upp. Cen. C. P. 89; South Carolina R. Co. v. Nix, 60 Ga., 572; L. & N. R. R. Co. v. Garrett, 8 Lea, 438.

2.  The court wrongfully submitted instructions to the jury after the case had been submitted. Milward v. Luetgart, 19 R. 701; L. & N. v. Sears, 22 R. 152.

3.  The verdict of the jury is against the evidence.

BENJAMIN D. WARFIELD for appellee.

POINTS DISCUSSED AND AUTHORITIES CITED.

Appellants John Anderson and Mat Anderson sued appellee in the Knox Circuit Court to recover damages for being required to leave one of appellee's passenger trains, upon their failure to produce to the conductor tickets, or to pay him their fares, entitling them to ride. In the John Anderson case, after having improperly refused to grant appellee's motion to instruct the jury peremptorily to find for it, the jury voluntarily returned a verdict in appellee's favor. In the Mat Anderson case, the jury returned a verdict for appellee under an instruction from the court. These judgments did not deprive appellants of any legal right; were proper; and should be affirmed. L. & N. R. Co. v. Cottongim, 104 S. W. 280, 31 R. 871; Hutchinson on Carriers, 3rd. Ed., Sec. 1036; Nutter v. Southern Ry. in Ky., 25 R. 1700, 78 S. W. 470; Railroad Co. v. Willard, 31 Ill. App. 435; Harp v. Ry. Co., 119 Ga. 927, 47 S. E. 206, 100 Am. St. Rep. 212; L. & N. R. Co. v. Fleming, 14 Lea (Tenn.) 128; Knowles v. Railroad Co., 102 N. C. 59; State, ex rel. Atwater v. D., L. & W. R. Co., 2 Atl. 803; T. & P. Ry. Co. v. Smith, 84 S. W. 852; Wills etc., v. Tanner, etc., 13 R. 741; L. & N. R. Co. v. King's Adm'r, 115 S. W. 196, 198; I. C. R. Co. v. Jackson, 117 Ky. 906, and Harrod case there cited.

Milward v. Luitgart, 19 R. 701; L. & N. R. Co. v. Sears, 22 R. 152, relied on by appellants, examined and shown to be authority for appellee instead of for appellants.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

On the evening of November 24, 1906, about 11 o'clock p. m., appellant, John Anderson, with his father, crippled sister, and her two infant children, boarded one of appellee's passenger trains at Middlesboro, Ky., to go to Grays. Appellant's father gave him the money, and he purchased three tickets from the station agent. About the time they entered the car, appellant gave his sister one of the tickets and retained the other two. They entered the coach attached to the rear of the smoking car; appellant and his father took seats in the front end of the car, and his sister took a seat about one-fourth or one-third of the way back from the front. It seems that the conductor passed through the smoking car first, taking up tickets, and then entered the front end of the coach in which appellant was riding. The conductor called first on the father for his ticket, and was informed that appellant had them. Appellant began to search for the tickets when the conductor entered the car, and, when he was asked for the tickets by the conductor, he answered that he could not find them. Appellant and his father both testified that the conductor said, in effect, "you have no tickets; you are trying to beat your way," and said that they must get off, and pulled the bell cord, and the train was slowed to nearly a stop, when appellant's father arose from his seat and said to the conductor, "don't put us off; we have tickets and will find them for you, but we do not want to detain you," and handed him a $10 bill and requested him to go on taking up tickets. The conductor asked them where they were going. The father answered: "The tickets will show. I don't want you to take our fare out of that $10." The conductor took the bill and continued to take up tickets for one or two seats, then turned and asked them if they had

found the tickets. They answered, "No." The con-
ductor then said to them: "You have no tickets; you
are trying to beat your way and you must get off."
He then pulled the bell cord, the train stopped, and
appellant and his father left the train under the or-
ders of the conductor. The train was started, the
conductor resumed the taking up of the tickets in the
coach, and when he reached appellant's sister she de-
livered her ticket to him and asked him if he had re-
turned the $10 that her father gave him. He answered,
"No," and she demanded it. He consented to give it
to her if she would sign a receipt for it, which she did.
Appellant and his father both testified that, within a
minute or two after they were put off of the train
appellant found the two tickets in one of his coat
pockets. They retained these tickets until the day
they employed counsel to institute their actions, at
which time they delivered them to one of their coun-
sel, S. B. Dishman, who testified that they were dated
November 24, 1906; that they were for passage from
Middlesboro to Grays; that he got them misplaced
when he moved his office, and had not been able to
find them, but that he had them some place. Appel-
lant and his father were put off of the train in the
woods where there were no inhabitants near. They
moved along the railroad track until they came to a
coal shanty built for the workmen to stay in when it
rained, where they remained all night without any
place to sleep, except upon the floor, and it was a
pretty cold night.

Appellee introduced three witnesses whose testi-
mony tended, in some particulars, to contradict the
version of the transaction as related by appellant's
witnesses, but not to any material degree.

The court instructed the jury, and it returned a verdict in behalf of appellee. Appellant asks a reversal for several reasons: First, on account of incompetent evidence; second, irregularities on the trial in giving instructions and withdrawing them and giving others; third, because the final instructions given were erroneous.

Cooper, the conductor who put appellant off of the train, died before the case was tried, and appellee attempted to contradict the testimony of appellant with reference to the manner they claimed to have been treated by the conductor upon that occasion, by charging them with trying to beat their way, etc., by the following method: Their first witness, Bain, was asked the following questions, to which he made the following answers: ''Q. Tell the jury what was his general habit (meaning Cooper's) toward the treatment of passengers on his train, so far as you always observed. (Plaintiff objects; objection overruled; plaintiff excepts.) A. Very kind. Q. Wasn't that his usual disposition? A. Yes.''

One or two other witnesses testified to the same effect. The court erred in allowing this testimony to be introduced; it was incompetent. The question that was being investigated was : what was the conduct of the conductor at the time and just prior to the ejectment of appellant from the train? Appellee could no more make the character of proof stated than could appellant have proved that the conductor had on previous occasions ejected other passengers from his train without cause and in an abrupt and insulting manner. Neither is competent testimony. As this case will have to be reversed for this and other reasons hereinafter stated, we will now refer to testimony intro-

duced by appellant which was incompetent, but was not objected to by appellee, therefore the court did not err in the matter; but on another trial, if objections be made, the court should not permit appellant to testify in his own behalf, because the transactions about which he complains took place with Cooper, the agent of appellee, who died before the trial was had. See subsection 2, Sec. 606, Civ. Code Prac.; Harpending's Ex'ors v. Daniel, 80 Ky. 449; 4 R. 300; Breckinridge v. McRoberts, 47 S. W. 454, 20 Ky. Law Rep. 699; Mutual Life Ins. Co. of Ky. v. O'Neill, 116 Ky. 742; 76 S. W. 839; 28 R. 983, and several other opinions recently delivered, but which it is unnecessary to cite.

It appears from the record that the court gave all the instructions asked by both appellee and appellant, and also a complete set prepared by the court. All of them are argumentative, conflicting, and calculated to confuse and mislead the jury. The arguments of counsel were made before noon, the jury sent to their room for deliberation but failed to agree, and court was adjourned. Upon reconvening in the afternoon, the court withdrew all the instructions referred to, prepared and gave a new set which came nearer stating the law of the case. The jury took these instructions and, without further argument by counsel in the case, returned a verdict for appellee. Appellant is not in a position to complain of not being allowed to argue the case after the giving of the second set of instructions, because the court granted them the privilege and they declined. We are of the opinion, however, that appellant did not have a fair trial on account of the incompetent testimony referred to and the irregularities in the manner of instructing the jury and the errors contained in the instructions. The

instruction given by the court on the measure of damages was correct. The question at issue was simple. It was the duty of appellant when he was approached by the conductor to either deliver his ticket or pay his fare, and if he had refused to do either the conductor would have been justified, then and there, in putting him off of the train; but it was his duty to do so without insulting or injuring him, and he had a right to use no more force than was necessary to eject him. But in this case appellant did not refuse to pay his fare or deliver his ticket. He stated to the conductor that he had purchased a ticket and had it, but had misplaced it, and he was then making an effort to find the ticket, and it was the duty of the conductor to give him a reasonable time in which to find it, if he could. The only question placed in issue by the pleadings and proof was: Did the conductor, under the facts and circumstances proved in this case, give appellant a reasonable time in which to find his ticket?

In volume 6, Cyc. p. 552, it is said: ''The passenger is entitled to a reasonable time in which to present his ticket or check or pay his fare before being expelled, and if he is acting in good faith the conductor has no right to eject him from the train without affording him a reasonable opportunity to make payment or to find and present his ticket or check, if lost or mislaid.''

The court properly told the jury that the handing of the $10 bill to the conductor with directions to not take the fare out of it was not a payment of the fare, but the court should have also told the jury that they might consider that testimony with reference to the question of the good faith of appellant in his claim that he had a ticket but had misplaced it. If the conduc-

Anderson v. L. & N. R. R. Co.

tor had reasons to believe that he was misrepresenting the facts when he made that claim, he had a right to put him off, but the fact that the $10 had been placed with him and that he was asked to take up the balance of the tickets in the coach and give appellant time to find the misplaced ticket was a fact to be properly considered by the jury in determining whether such request was reasonable and made in good faith for the purpose of gaining time to find the ticket. In fact, the jury had a right to consider what was said and done by the parties at the time of the occurrence mentioned, for the purpose of determining whether the conductor or appellant was acting in good faith, and this without any intimation from the court as to the weight and effect that should be given it by the jury.

In the case of Maples v. New York & New Haven Railroad Company, 38 Conn. 557, 9 Am. Rep. 434, the plaintiff was asked for his ticket by the conductor, and he told him that he had it but was unable to find it because it was mislaid. The court said in that case: "Under such circumstances the plaintiff was entitled to ride as long as there was any reasonable expectation of finding it during the trip. Had a reasonable time been allowed him to find it, undoubtedly it would have been found, for it was upon his person, and dropped from his garments when he undressed himself to retire that night."

In the case of Hayes v. New York Central Railroad Co., quoted from in the case of Clark v. Wilmington & Weldon Railroad Company, 91 N. C. 506, 49 Am. Rep. 647, the court said: "If the ticket of the plaintiff was mislaid, and he in good faith was trying to find it, he was entitled to reasonable time to enable him to do so, if he could, and if, in case of failure to find it

after such reasonable opportunity, he was willing and ready to pay his fare, the conductor had no right to put him off.''

The case of Clark v. Wilmington & Weldon Railroad Company, supra, was one where a passenger had boarded a train with two other persons who had promised to furnish him money to pay his fare. He took a seat in one car, and the two friends went into the car coupled to the rear of it. The conductor went to him for his ticket; he told the conductor that he had no ticket or money with which to pay his fare, but that he had some friends in the next car who would pay it for him, if he would permit him to go back to see them. The conductor refused to allow him to do this, and immediately ejected him from the car. In discussing that case, the court said: ''Where there has been no refusal to pay the fare and the obligation is not disputed, but some reason, such as mislaying of the ticket or loss of pocketbook in which the money is kept or other adequate cause, prevents a prompt response to the conductor's demand, it is but reasonable that an opportunity should be allowed the passenger to search for what is mislaid or lost or to provide other means of payment, where the delay does not interfere with the regular duties of the officer in charge. The delay in the present case would have been momentary, if, indeed, any had been occasioned in permitting the plaintiff to precede the conductor in passing into the next coach and getting the money in time for the call on Braswell or before Braswell had been reached. Instead of complying with this request made in good faith, the conductor arbitrarily and instantly rang the bell and expelled the plaintiff, producing an interruption in the movement of the train that would have been rendered unnecessary

if a brief time had been given to the plaintiff to get the money promised him. This was a harsh exercise of power, injurious to the plaintiff, and needless in the protection of the interest of the company. The cases that uphold the right of the carrier company summarily to expel from its train a passenger who does not produce his ticket, or pay when called on as required by its regulations, are all, so far as we have examined, cases of the denial of the right to demand the fare, or a refusal to pay it upon some untenable ground, so that the conductor must submit or enforce his authority against the resisting passenger and prevent his riding unless he does pay. * * * In all cases a reasonable indulgence should be shown a passenger in his effort to comply with the rules of the company, and what is reasonable must be determined in connection with surrounding circumstances and in view of the facts of each case. We think the plaintiff's request was reasonable, and that the hasty and precipitate action of the conductor was in excess of the authority with which the law armed him.''

Appellee's counsel cites the case of Nutter v. Southern Railway in Kentucky, 78 S. W. 470, 25 Law Rep. 1700, as sustaining the action of appellee's conductor in this case. In that case Mrs. Nutter and her friend, Mrs. Logan, purchased tickets at Seventh street station in Louisville, Ky. Mrs. Logan took possession of the tickets; they went to the train, and Mrs. Nutter boarded it, but by accident Mrs. Logan, who held the tickets, failed to get on. After the train left the station, and at about Fourth street, the conductor asked Mrs. Nutter for her ticket. She explained that she had bought it at Seventh street station, and that her friend, Mrs. Logan, had it, but for some reason

had failed to get aboard the train. She, under these circumstances, of course, had no ticket to produce, nor did she have any money to pay her fare, and the court decided that the conductor properly ejected her from the train at that point. The conductor was entitled to the ticket or the fare. The case is unlike the one at bar.

For these reasons the judgment of the lower court is reversed and remanded for further proceedings consistent herewith.