## Bastin v. Givens, Administratrix, et al.

(Decided May 16, 1916.)

### Appeal from Laurel Circuit Court.

1. Trial—Submission.—A submission to which no objections were offered upon exceptions to a master's report at the same term, but not the appearance term at which an amended petition and answer are filed, is not premature when the case theretofore had been referred to the master by an agreed order of reference to hear proof and report upon every issue raised by the pleadings.

2. Corporations—Insolvent Corporation—Payment by Officers Out of Assets.—An officer of a corporation may not out of its assets, after it is insolvent and an action for the settlement of its affairs has been filed against him by another stockholder and director, pay his own claim against the company, or one upon which he is surety, but will be required by the chancellor to pay said funds into court for the benefit of all the creditors, and take pro rata payments upon his proven claims as distributions are made by orders of court.

3. Corporations—Officers and Agents—How May Act—Records.—A corporation can act only through its directors at an official meeting regularly held, and its acts can be proven only by the records of such meetings.

4. Corporations—Officers and Agents—Evidence.—Casual conversations among directors are insufficient to bind the company, and evidence of such conversations is incompetent.

5. Corporations—Unlawful Use of Funds by Employe—Manager Not Bound.—The general manager in charge of the operation of a corporation's business is not liable for unlawful use of the company's funds by an employe not authorized or consented to by him.

SAM C. HARDIN and H. C. FAULKNER for appellant.

H. C. CLAY for appellees.

OPINION OF THE COURT BY JUDGE CLARKE.—Affirming.

In 1903, Jackson Givens, J. W. Bastin and some others, joined in the incorporation of the New Laurel Coal Company under the laws of Kentucky with a capital stock of $25,000.00 divided into 250 shares. From January 1, 1904, until the institution of this action the appellant, J. W. Bastin, was a director, secretary and general manager of the corporation, managing and directing its affairs almost without supervision or interference upon the part of the directors. As it appears from the record, during the ten years of this company's existence the directors held

but four meetings, the last of which was the called meeting held on December 27, 1910, at which Dr. Givens was elected president of the company.

Thereafter, and prior to July 8, 1914, when this suit was filed by his committee, Dr. Givens was adjudged incompetent to manage his affairs. The petition alleged that the company was insolvent and asked the appointment of a receiver for the company, and that its affairs be finally settled.

Not long thereafter Dr. Givens died, and the action was revived in the name of his administratrix, when a consent order of reference to the master was entered, directing him to ascertain, hear proof and report upon the company's assets, its liabilities and the ownership of its capital stock, Under this order of reference the master, after giving notice, heard proof and on March 4th, 1915, the twenty-second day of the February term of court filed a report of his findings under the order of reference together with the transcript of all the proof that had been heard by him. To this report appellee filed exceptions, but no exception was filed by appellant, and appellee also filed exception to some of the evidence given before the master upon which his report was based. At a later date, during the same term of court, on March 10, 1915, this order was entered:

"It is now ordered that this case be and is submitted upon the exceptions to the commissioner's report herein."

No objection or exception was made by any party to this order of submission nor does it appear upon whose motion it was entered. After all the proof had been heard by the master upon the order of reference, but before his report had been filed on February 9, 1915, appellee tendered an amended petition, to the filing of which appellant objected. This amended petition presented no new plea, but simply set out in detail some facts in reference to the condition of the company as had been disclosed by the evidence heard by the master. The amended petition was ordered filed over the objection of appellant, whereupon appellant on February 22, 1915, filed an answer traversing the allegations of the amended petition as well as some of the allegations of the original petition. It will be noticed that this answer was filed at the same term and but a few days before the order submitting the case upon exceptions to the master's report. The case having been submitted upon exceptions to the master's

report without objection, the court sustained most of the exceptions filed to said report as well as the exceptions to some of the evidence given by appellant and his son-in-law before the maɔter, and entered a judgment against appellant directing him to pay to the master the sum of $3,000.00, $2,000.00 of which was the proceeds of an insurance policy collected by him after the institution of this action for the destruction by fire of the company's commissary, and the other $1,000.00 of which was for coal belonging to the company that had been delivered by appellant to one W. A. Pugh in payment for some stock of the company that the court adjudged upon the exceptions to the master's report had been bought by, and belonged to appellant and not the company. To this judgment appellant objected and prayed an appeal to this court which was granted, and to so much of said judgment as refused to allow against appellant the sum of $600.00 paid by his son-in-law out of the company's money for an automobile for his own private use, appellee has been granted in this court a cross-appeal.

Appellant is urging here as grounds for reversal (1) that the submission was premature, and (2) that upon the evidence the judgment against him for $3,000.00 was erroneous, while the ground for appellees cross-appeal is that upon the evidence a judgment should have gone against appellant as well as his son-in-law for the $600.00 that was paid by the son-in-law out of the company's money for the automobile.

To support his contention that the submission was premature appellant relies upon Section 366 of the Civil Code of practice. This section, however, has no application to the facts in this case. Every issue that was submitted and tried was by consent referred to the master. The amended petition that was filed over appellant's objection, and his answer thereto, presented no plea that was not directly involved in the order of reference, and neither the amended petition nor the answer in any way changed or affected any issue that had been referred to the master.

Appellant not only consented to the order of reference, but filed no exceptions to the master's report, nor objected to the submission upon the exceptions filed thereto by appellee. This record therefore not only shows that appellant affirmatively consented to the reference of these matters for trial by the master, but that by failing

to file exceptions to his report or to object to the submission for a judgment upon the exceptions filed thereto by appellee, he also consented to the submission.

Besides this was not the appearance term and the issues made by the pleadings should have been completed by appellants filing his answer at a previous term of the court, and he cannot now object upon the ground that the submission was premature.

We come now to a consideration of the judgment to ascertain whether or not upon the evidence it erroneously adjudged appellant to pay to the master the $3,000.00, and whether or not a judgment should have gone against him for the $600.00 of the company's money paid for Lee Mitchell's automobile.

As heretofore stated this $3,000.00 is made up of two items, the first being $2,000.00 collected by appellant as general manager of the New Laurel Coal Company upon insurance policies in settlement of the loss by fire of the commissary. This collection was made by appellant after the institution of this suit, and when collected by him was used in paying to himself $1,000.00 that he claimed the company owed him for a debt that he, as surety for the company, had to pay, and the other $1,000.00 of the insurance money he paid to satisfy a note in one of the London banks upon which he was surety, the result of both of which payments was to prefer himself over the other creditors of the company, as it is manifest from the record that the company at that time was hopelessly insolvent, of which he, of course, knew as general manager and secretary of the company.

As an officer of the company he cannot, of course, be permitted to use the assets of the company to pay his own claim in full, but like other creditors must present his claim and when proven, share ratably with the other creditors of the company. Standard Mfg. Co. v. Hutchison, 63 Fed. Rep. 496, and Ashville Lbr. Co. v. Hyde, 172 Fed. Rep. 730.

The second item of $1,000.00 included in the $3,000.00 judgment against appellant is for property of the company sold and delivered by him in satisfaction of his own individual indebtedness. W. A. Pugh was the owner of 41 2-3 shares of the capital stock of this company which, about January 1, 1911, he sold to appellant, taking his note for $1,000.00 in payment therefor. By an arrangement between appellant and Pugh, when the note came

due, appellant paid it by delivering to Pugh coal of that value belonging to the company. Appellant claims in his testimony, in which he is supported by the testimony of Lee Mitchell, that the 41 2-3 shares of stock purchased from Pugh was not purchased for himself, but was purchased for the company, and he attempts to show authority for this purchase by conversations with Dr. Givens, who was also one of the directors of the company, but there is no record of any authority given by the directors at any official meeting to purchase this stock, which under secton 544, Kentucky Statutes, they had no right to do and even had the individual directors in a conversation consented to the purchase of the stock for the company, the company would not be bound thereby, as it is a well settled doctrine that a corporation can act only through its directors at an official meeting regularly held, and that its acts can be proven only by the records of such meeting. Star Mill Co. v. Bailey, 140 Ky. 194.

Exceptions were filed by appellee to the testimony of appellant and Mr. Mitchell of the conversations alleged to have been held with Dr. Givens with reference to the purchase of this stock for the company. At the time of the giving of this testimony Dr. Givens was dead, and the testimony can be binding upon the company in no event unless Dr. Givens at the time had been the agent of the company with authority to bind it upon such a matter, and even if the authority had been shown, which is not, the testimony of the conversation with Dr. Givens which seeks to bind the company upon the ground that Dr. Givens was at the time its agent was incompetent after his death, so in any event this testimony was incompetent and the exceptions thereto were properly sustained. Section 606 of the Civil Code of Practice; Harpending's Ex. v. Daniel, 80 Ky. 449; Mutual Life Ins. Co. v. O'Neil, 116 Ky. 742; Anderson v. L. & N. R. R. Co., 134 Ky. 343; C., N. O. & T. P. Ry. Co. v. Martin, 146 Ky. 260.

With this testimony out, the testimony in the record shows conclusively that the purchase of the stock from Mr. Pugh was made by appellant for himself, and the court properly adjudged that he was the owner thereof, and that he should pay to the master commissioner the sum of $1,000.00 for the company's coal used by him to discharge his own obligation.

Appellant also contends that even if it should be held that his payment of the $2,000.00 insurance money on his

own debt and the debt of the company, upon which he was surety, was unauthorized, it was still error for the court to adjudge that he should pay the full amount of same to the master commissioner, but that he should have been required to pay only the excess over what was due him upon his claims against the company in a pro rata distribution upon final settlement of the company's affairs, but this contention is without merit. The basis for distribution cannot be ascertained until the assets of the company have been reduced to cash and gathered together in the hands of the court's commissioner. As this fund belonged to the company and not to appellant he had no right to hold same. Only by collection can the court know certainly what funds are collectible.

The court in the judgment did not allow appellant's claim for these two debts upon which he paid the insurance money, and some other claims for and against the company but expressly reserved the right thereafter to prove said claims, and re-referred the matter to the master commissioner for the purpose of receiving and hearing proof upon these and any other claims for or against the company; and until the lower court finally rules upon these matters they are not before us.

Upon the cross-appeal appellee is complaining because the court overruled her exception to the report of the master in failing to charge appellant with the $600.00 used by Lee Mitchell to purchase an automobile. She bases this contention upon the fact that appellant was general manager and in absolute control of the company's business, and that as such he employed Lee Mitchell as a clerk with authority to issue checks against the company's funds; that Lee Mitchell in the exercise of this authority given him by appellant, unlawfully used the company's funds to the extent of $600.00 for his own purpose, and that appellant having given him this authority ought to be required to make good to the company this amount.

Appellant had been general manager of the company since it began business and for more than ten years, during all of which time it is presumed that he employed such assistants as were needed in the management of its affairs. The record shows that he employed Mitchell as a clerk to keep the books, make collections and payments for and on behalf of the company in 1908; that appellee's intestate and the other directors and stockholders of the company had full knowledge of this employment and of

the authority vested in Mitchell over the company's affairs. It is not shown that appellant knew of or consented to this payment by Mitchell, and we know of no authority under such circumstances for holding appellant liable for the seeming unlawful appropriation of the company's funds. Appellee cites no authority in support of her contention.

Wherefore the judgment is affirmed upon both the original and cross-appeal.