## Kozy Theatre Company, et al. v. Love, et al.

(Decided February 4, 1921.)

### Appeal from McCracken Circuit Court.

1. Landlord and Tenant—Construction of Contract—Lease—Inten
   tion of Parties.—While this court recognizes a technical distinc
   tion between a covenant to renew and a covenant to extend a
   lease, whether a covenant is to renew or extend depends upon the
   intention of the parties as shown by the entire lease and their in
   terpretation thereof before a controversy arose, and the fact it is
   called in the lease a privilege to renew is non-conclusive.

2. Landlord and Tenant—Construction of Contract—Lease.—Such a
   covenant in a lease like any other will be construed according to
   its terms if these are certain, but if there was any doubt of what
   was meant by what was said in the lease the actions of the par-
   ties before a controversy arose may be examined to ascertain their
   interpretation of the word "renew," the legal import of which
   when so used usually being in doubt.

3. Landlord and Tenant—Privilege to Renew Lease.—A privilege to
   renew for an additional term held to mean, as shown by the lease
   itself, something more than a mere holding over and payment of
   rent, and by the acts of the parties to be a privilege to the lessees
   to continue or extend the original lease by giving written notice
   within the existing period of their intention so to do.

4. Landlord and Tenant—Lease—Signatures—Notice.—Such notice
   signed by two of six lessees held to have been given and accepted
   for all, and that having so accepted same the lessor waived the
   question as to the sufficiency of the notice signed by part only of
   the lessees and of the fact one of the lessees had surrendered its
   charter as a corporation and become a copartnership during the
   first period.

5. Landlord and Tenant—Assignment of Lease.—So also with as-
   signees of the lessor since they hold under and have no greater
   rights under the lease than their assignor had at the time of the
   assignment.

6. Frauds, Statute Of—Privilege to Extend Lease—Notice.—Where
   the privilege is to extend the original lease by giving notice and
   execution of a new lease is not required, the tenant holds for the
   additional term under the original lease and not the notice, hence
   the act of giving notice is not an agreement within the statute of
   frauds.

7. Corporations—Customs and Usages—How Directors May Act.—
   While as a general rule a board of directors must act as a body
   or unit at regular meetings and their acts must be proven by the
   records of such meetings, they may by acting separately or at
   casual or informal meetings establish a custom or usage that will
   be binding upon them and the corporation.

8. Corporations—How Directors May Act.—Another exception to the general rule requiring the directors to act as a body is necessary where the directors own all of the stock and give an executive officer in charge of the business informal authority to act, or where the stockholders acquiesce in the action taken by the directors separately and carried out by the corporation.

9. Landlord and Tenant—Renewal or Extension of Lease—Construction.—Where the original parties to a lease construed covenants therein for a "renewal" to mean an extension of the original contract rather than the execution of a new lease, they and their assignees will be bound thereby in construing like covenants for additional extensions provided for in the contract.

10. Names—Fictitious Names.—Several parties transacting business in this state under the true name of one of their number are not amendable to section 199b, Ky. Stats., forbidding the use of a fictitious name except as therein provided.

11. Contracts—Names—Section 199b, Ky. Stats.—A contract executed by a party amenable to but who has not complied with section 199b, Ky. Stats., is not void but voidable only at the option of the party not in fault and enforceable against the party in fault.

12. Contracts—Names—When Voidable.—When a party makes a contract with several, as to one of whom it is voidable under section 199b, Ky. Stats., at the option of the first party and he elects to avoid it as that one, the contract will be treated as having been made only by those who had the right to make it in determining their rights and obligations thereunder.

BRADSHAW & McDONALD for appellants.

HENDRICK & BURNS for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

The Palmer Hotel Company, a Kentucky corporation, owns its hotel property in Paducah and the adjacent building known in this record as the Kentucky Theatre.

On July 1, 1918, the hotel company by written contract leased the Kentucky Theatre "for the period of one year from July 1, 1918, with the privilege to the lessees to renew this lease at the expiration thereof under like terms for a period of one year from July 1, 1919, and a like privilege to renew for one year from July 1, 1920, and a like privilege to renew for one year from July 1, 1921," to the six appellants, Kozy Theatre Company, Arcade Theatre Company, Lawrence Dallam, Leo F. Keiler, Rodney C. Davis and R. R. Kirkland. It was stipulated that the lessees were to pay to the lessor $1,800.00 a year rental, "payable at the rate of $150.00

per month during the period of this lease or any renewals thereof;" and "at the expiration of this lease, . . . no notice to quit shall be necessary and the lessor shall have the right to enter and take possession."

Appellants took possession, paid the rent for the first year as due, and on June 14, 1919, caused to be written and delivered to Mr. J. C. Utterback, secretary, treasurer and general manager of the hotel company, the following letter:

"Mr. J. C. Utterback, Secy.,
Palmer Hotel Co.,
Paducah, Ky.

"My dear Sir:—

"Please be advised that we wish to exercise our right to continue the lease for the Kentucky Theatre for one year from July 1, 1919, as provided in the original lease, bearing date of July 1, 1918, and hereby bind ourselves for the said period to all conditions of the said original lease.

"Very respectfully,

"Kozy Theatre Co., Inc.,

By Rodney C. Davis, Pres.

"Arcade Theatre Co.,

By Leo V. Haag, Manager."

Upon receipt of the above letter Mr. Utterback told Mr. Davis, who was himself one of the lessees and also president and general manager of the Kozy Theatre Company, that "it is all right and agreeable to us." Mr. Utterback informed the other officers and directors of the notice and his consent to a continuance of the lease for another year and they informally approved of his action but no new lease was executed nor was any formal action taken with reference thereto by the hotel company.

The lessees through Mr. Davis paid to Mr. Utterback, who accepted same for the hotel company, rent at $150.00 per month for July and August, 1919; and each month thereafter during the year ending July 1, 1920, paid the same amount to appellant, Quincy B. Love, to whom and one Green the hotel company on August 8, 1919, leased both the hotel and Kentucky Theatre buildings for a term of fifteen years. Love having acquired Green's rights under their lease in April, 1920, assigned to appellee Rehkopf all of his rights to the Kentucky Theatre.

Love and Rehkopf then notified appellants that they could not retain the theatre after July 1, 1920. Appellants however gave Love and Rehkopf written notice before July 1, 1920, that they intended to exercise their option to renew their lease for another year and tendered to them for execution renewal lease for another year with the same renewal privileges for subsequent years and upon the same terms and conditions as contained in their original lease of July 1, 1918. Love and Rehkopf refused to execute the new lease or accept tendered rentals and on July 2, 1920, filed this forcible detainer proceeding against appellants.

This appeal is from the judgment of restitution entered in the circuit court upon a trial before the court without a jury of the traverse of a like judgment upon the inquisition before the justice of the peace who issued the warrant.

This court uniformly has recognized a technical distinction between a covenant to renew and a covenant to extend a lease, but has been just as consistent in holding that whether the privilege is to renew or extend depends upon the intention of the parties as shown by the entire lease and their interpretation thereof before the controversy arose, and that the mere fact it is called a privilege to renew is not conclusive. Illustrative cases are Brown v. Samuels, 24 Ky. L. R. 1216, 70 S. W. 1047; Ky. Lumber Co. v. Newall & Co., 32 Ky. L. R. 396, 105 S. W. 972; Grant v. Collins, 157 Ky. 36, 162 S. W. 539; Miller v. Albany Lodge, 168 Ky. 755, 182 S. W. 936; Mullins v. Nordlow, 170 Ky. 169, 185 S. W. 825; Gault v. Carpenter, 187 Ky. 25, 218 S. W. 254; Hurt v. McCord, 179 Ky. 1, 200 S. W. 2. See also Elliott on Contracts, section 4556.

The true rule to be gathered from these authorities as well as upon principle is that such a covenant in a lease, like any other, will be construed according to its terms if these are certain, but if there is any doubt of what was meant by what was said in the lease the actions of the parties before a controversy arose may be examined to ascertain their own interpretation of its meaning, since they better than anybody else knew what they meant by what they said. But in this connection it must be borne in mind as was well said in Ky. Lumber Co. v. Newall, *supra,* that: "The word renew etymologically contemplates something more than passivity in

suffering a state to continue as it was, but it is not so much a question of what the term strictly means, as what did the parties to the writing mean to express in its use.''

And that its meaning when used in a lease in connection with a privilege for an additional term is rarely ever free from doubt and usually must be explained by some other clause in the lease or by extraneous evidence, or both, is attested by the frequency with which the question is litigated and the lack of harmony in the decisions from different courts in attempting to construe its meaning and effect when so used. But as said in Grant v. Collins, *supra,* after reviewing numerous authorities: ''The apparent conflict in the cases as will thus be seen turns rather on the differences in the facts than on a different conception of the law.'' And the facts upon which nearly all of the cases turn will be found on examination to be additional clauses in the leases or the acts of the parties which explain what they meant by ''a privilege to renew.''

Just what legal import ought to be ascribed to the word renew in this connection in the absence of explanatory facts, is really the question upon which the courts disagree. Some hold it requires the execution of a new lease, which however may be waived; others that there is no distinction between a privilege to renew or extend, while still other courts, among which is our own, take a middle ground. Our court has gone no farther in an effort to define the term when so used than to hold as in the Newall case that it means ''something more than passivity'' and as in Miller v. Albany Lodge, *supra,* that by its use ''some positive act on the part of the parties, or notice by the tenant is required.''

Nor need we now attempt a definition, which manifestly would be difficult, since an additional clause in this lease and the acts of the parties explain what they meant by its use sufficiently for the purpose of this case.

The additional clause which we have heretofore quoted, as in the Grant-Collins case upon which appellees so confidently rely, makes it clear a simple holding over and payment of rent beyond the first period was insufficient to satisfy the terms of the lease, but there the analogy between the two cases ends.

In the case at bar the lessees, or rather some of them, gave timely notice of their desire and intention to ''re-

new'' or as they expressed it to continue the lease and Mr. Utterback, the general manager of the lessor corporation, not only gave express verbal assent thereto but thereafter accepted the stipulated rent with the approval of all of the directors and stockholders who knew that same was being paid by the lessees in the exercise of their contract right of renewal.

This certainly was no simple holding over by sufferance under the statute as in the Grant-Collins case. It was not so understood by either party; but was very clearly the performance of what each party not only believed but actually agreed to be a ''renewal'' or continuance of the original contract and therefore their interpretation thereof, hence upon authority of all of the Kentucky cases and most others we must so construe it, unless as contended by appellees, (1) the notice was without force or effect because not signed by all the lessees; or (2) the assent by Utterback to a renewal and his actions thereafter are not binding upon the lessor or its assigns because (a) not in writing, and (b) it was not approved at a formal meeting of the board of directors.

(1) There are cases such as Buchanan v. Whitman, 151 N. Y. 253, and James v. Pope, 19 N. Y. App. 324, cited by appellees and with which we do not disagree, to the effect that a landlord is entitled to hold all of the original lessees to a renewal or extension, and that some having retired from the business those remaining can not enforce the privilege for an additional term. But that rule has no application here since all of the original lessees continued as such and the notice signed by two of them was given for all and so understood not only by Utterback but also by appellees, Love and Rehkopf. This is shown by the fact that they gave notice to each of the original lessees to quit possession and made all of them defendants to this action for forcible detainer. Even if the notice for this reason was defective, which we do not hold, that question clearly has been waived by not only the original lessor but by its assignees as well by accepting rent from the lessees on the second year knowing it was paid for all and as tenants under an extension of the original lease and not as tenants by sufferance. But it is argued the Arcade Theatre Company by surrendering its charter as a corporation and becoming a copartnership within the first period so changed its character as to call for the application of the rule.

Whatever might have been the rights of the lessor had it upon this account refused to extend the original contract at the end of the first year, it is clear that having agreed to the extension presumably with knowledge of the facts, it could not thereafter terminate the contract and evict all six lessees because of this change in the character under which one of them was operating. Nor do we think after once having waived the question it could later during the continuance of the thus extended contract refuse another extension upon this ground alone, especially where it is not claimed the change in the character of one lessee in any wise prejudiced the substantial rights of the lessor. Certainly if the original lessor could not do so, its assignees cannot, since they had and can have no greater rights under the contract than their assignor had at the time of the assignment.

(2) (a) The contention that the verbal consent of Utterback to the "renewal" construed and called by them a continuance of the contract for an additional term is within the statute of frauds and therefore without binding effect, is based upon the theory that there could be no renewal except by the execution of a new lease. But obviously there is no merit in this contention upon the construction given the contract by the parties and therefore adopted by us as the true one, that a new lease was not required since the lessees by giving notice and holding over hold under the original contract and not the notice; and the giving of the notice is not an agreement within the statute of frauds. 16 R. C. L. 885.

The recent case of Cincinnati, N. O. & T. P. Ry. Co. v. Depot Lunch Room, 190 Ky. 121, is not in point because there was no provision whatever for an additional term in the expired lease and the verbal promise of a new lease relied upon there in defense of forcible detainer was an entirely independent promise in no wise connected with the original contract and within the statute of frauds. So also with the other cases cited by appellant in this question.

(2) (b) The only authority cited in support of the contention that a corporation can act only through its directors at an official meeting regularly held and that its acts can be proven only by the records of such a meeting is a statement found in Bastin v. Givens, Admrx., 170 Ky. 201, 185 S. W. 835, of the

general rule which with all its force was applicable to
the facts of that case. But there are many exceptions
to this general or strictly legal rule as was recognized
in Star Mills v. Bailey, 140 Ky. 194, 130 S. W. 1097,
which alone is cited in the Givens case on the question.
In Thompson on Corporations after stating the general
rule substantially as it was stated in the Givens case,
many exceptions thereto are set forth in section 1074
which is in part as follows: "The rule that the board of
directors must act as a body or a unit is not ironclad.
It has already been seen that a by-law may be created
by custom or usage. For similar reasons a board of
directors may by acting separately and in an individual
capacity establish a custom or usage that will be binding
upon them and upon the corporation. Thus where it
appeared that from a long practice or a customary usage
corporate business was transacted by securing the sep-
arate consent of the directors or that the business was
customarily transacted at either a casual or an informal
meeting of the board it was held as a matter of law to
constitute a sufficient approval in the absence of any
law or by-law restricting the directors to a different
mode. . . . Another exception to this general rule
requiring directors to act as a body, is shown in a case
where the directors themselves owned all of the stock of
the corporation and authorized the president to sell all
the assets, and it was held that it was immaterial that
such authority was not given at a regular meeting of
the directors. Acquiescence by the stockholders in the
action taken by the directors separately, and where such
action was carried out by the corporation was held suf-
ficient to render the acts valid." In support of this text
in whole or part we cite of the many available authori-
ties: Elk Valley Coal Co. v. Thompson, 150 Ky. 614, 150
S. W. 817; Herring v. Dix River, &c., Co., 23 Ky. L. R.
642; Ford Lumber & Mfg. Co. v. Cobb, 138 Ky. 174, 127
S. W. 763; Paducah Wharfboat Co. v. Mechanics T. &
S. Bank, 164 Ky. 729; Deposit Bank of Carlisle v. Flem-
ing, 19 Ky. L. R. 1947; German National Bank v.
Butchers, &c., Co., 97 Ky. 34; German National Bank v.
Grinstead & Co., 21 Ky. L. R. 674; Pittsburg, &c., R.
Co. v. Woolley, 12 Bush 451; 10 Cyc. 1102; Fletcher's
Cyc. of Corp., vol. 3, pages 3049 and 3398; Cook v. Jones,
96 Ky. 283, 28 S. W. 960.

The appellants in the instant case not only offered to prove a customary usage in transacting corporate business that brought this transaction within the first of the three exceptions to the general rule set out above, which was erroneously excluded by the trial court, but they also offered and were permitted to introduce evidence bringing the transaction within the other two named exceptions to that rule.

It is clear therefore that the lessor the Palmer Hotel Company and its assigns, Love and Rehkopf, are bound by the acts of Mr. Utterback, and for the same reasons upon like evidence the Kozy Theatre Company became bound by the acts of Mr. Davis, its president and general manager, in both the execution and extension or "renewal" of the original contract at the expiration of the first period.

This being true it is apparent Love and Rehkopf could not terminate the contract at the end of the second year upon notice to appellants to surrender possession. It is likewise clear it seems to us that even if the privilege had been technically one for a renewal requiring the execution of a new lease appellees could not take advantage of their own refusal to execute same and evict appellants after they had signed and tendered it to them for that purpose. But however that may be the appellees took the lease as it already had been construed by the original parties thereto and appellants before the expiration of the second year did all and more than they were required under that construction to perfect their right to a further extension thereof.

In this view of the case we need only notice one of the several other questions argued in briefs. That is whether or not the lessees because of their failure as a whole and of one of their number to comply with section 199b, Kentucky Statutes, are deprived of their right to urge their contract in defense of this action. Section 199b of the statutes forbids any person or persons to carry on, conduct or transact any business in this state under an assumed name until a statement has been filed in the county clerk's office of the county where they propose to operate giving the name to be used and names and addresses of the persons so engaged.

But by subsection 4 of this section it is provided that the act shall not apply to Kentucky corporations or "be deemed or construed to prevent the lawful use of a

partnership name or designation, provided that such partnership name or designation shall include the true real name of at least one of such persons transacting business.'' It is shown by the letterhead upon which the notice of renewal was written that the lessees have been operating the Kentucky Theatre and several others under the name of the Kozy Theatre Company, which is a Kentucky corporation; and Mr. Davis, one of the lessees and also president of the Kozy Theatre Company, and R. R. Kirkland, another lessee, testify that the funds derived by the lessees from operating the Kentucky Theatre are kept in bank under the name ''R. C. Davis, manager of the Kozy Theatre Co.;'' that checks against the account are so signed and no business was done under any other name. There is no other evidence on the question and therefore none that the lessees have been or are doing any business under any name except that of one of their number, which is not a violation of the act. Commonwealth v. Seiler, etc., 176 Ky. 802, 197 S. W. 453. Besides the only business involved here is the execution and extension of the lease, which was done in the real names of the parties. The Arcade Theatre Company, one of the lessees, is sued as a Kentucky corporation, and only as such is it a party to this action, but it is shown by proof that during the first year of the contract it surrendered its charter, and the same stockholders have continued its business under the same name but as a copartnership. Even if it be conceded, which we do not so decide, that this fact would have warranted a refusal by the landlord to grant an extension had it been the sole lessee (see Somerset Stave & Lumber Co. v. Brown, 173 Ky. 184, 190 S. W. 680) we are sure that fact alone would not justify a refusal to grant an extension to the other lessees. A contract executed by a party who is amenable to but has not complied with 199b, Kentucky Statutes, is not void but voidable only at the option of the party not in fault and enforcible against the party at fault. Warren Oil & Gas Co. v. Gardner, 184 Ky. 411. Surely then the landlord can not elect to treat the obligation of one of several joint tenants as void and thereby release him from the contract, and then urge that release which was optional with him as a reason for violating his valid covenant with his other tenants, and which all are insisting upon performing. To so construe the statute would impose its severe penal-

ties upon parties not amenable thereto, and that too upon an unwarranted application of the rule that the landlord is entitled to have all the lessees comply with the covenant of renewal, since here the landlord can, if he will, enforce the extended contract against all of the same lessees bound when he acquired the property.

Therefore with reference to such facts the statute can only be fairly and reasonably construed to mean that when a party makes a contract with several as to one of whom it is voidable at the option of the first party and he elects to avoid it as to that one, the contract must be treated as having been made only by those who had the right to make it in determining their rights and obligations thereunder.

In our opinion the appellants are entitled to hold the premises under their exercise of the option provided in the lease, and appellees did not have the right to evict them.

Wherefore the judgment of restitution is reversed and the cause remanded for proceedings consistent herewith.