## Title Guaranty & Surety Company v. Hay, et al.

(Decided May 18, 1917.)

### Appeal from Franklin Circuit Court.

1. Trial—Direction of Verdict.—Where the plaintiff's proof showed that he was entitled to recover some amount, although not all that he claimed, the defendant's motion for a peremptory instruction was properly overruled.

2. Principal and Agent—Powers of Agent.—Express authority, as involved in the law of agency, is that authority which the principal directly grants to the agent; and, this includes, by implication, whether the agency is general or special, unless restricted to the contrary, all such powers as are proper and necessary as a means of effectuating the purposes for which the agency was created.

3. Principal and Agent—Implied Authority in Agent.—Implied authority in an agent is that authority which the principal intends his agent to possess, and which is proper, usual, and necessary to the exercise of the authority actually granted, or which is implied from the conduct of the principal, as from his previous course of dealings, or from his conduct under circumstances working against him an equitable estoppel.

4. Principal and Agent—Authority of Agent.—The general state agent of a surety company with power to execute bonds, to select and appoint other agents, and to supervise the company's business affairs in connection with the execution of bonds, had the authority to bind his company by a contract for the completion of a road which had been abandoned by the contractor for whom the surety company stood bound for the completion of the road.

5. Appeal and Error—Former Opinion.—The opinion of the Court of Appeals upon a first appeal states the law for subsequent trials where the pleadings are the same and the evidence is not materially different.

BROWN & NUCKOLS for appellant.

O'REAR & WILLIAMS for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

This is the second appeal in this case. The opinion on the former appeal is printed in 165 Ky. 76; and, although the facts are there stated in detail, a brief restatement of the case, in outline, will be necessary to understand the questions involved upon this appeal.

In September, 1911, George W. Harper contracted with Franklin county for the construction of a turnpike

road for $5,500.00, with the appellant company as his surety. As an inducement, however, for the company becoming Harper's surety, Hay, Smith, Baker, Horton and Mills gave the surety company a joint bond for $2,000.00, indemnifying it to that extent, against loss on account of its suretyship on the Harper bond.

Harper having failed to execute his contract, Hay and his co-indemnitors in the bond to the surety company, completed the road at a total cost of $14,084.12. They received, however, $4,600.00 which the county owed under the contract, which, when added to the $2,000.00 secured by the bond, reduced the liability of the surety company by $6,600.00, leaving unpaid $7,484.12 of the total cost of the road.

This suit was filed by Hay and his co-indemnitors in the $2,000.00 bond, to recover this balance of $7,484.12, upon the theory that they had constructed the road after Harper's default, at the verbal request of the surety company made through its general agent, Samuel K. Bland, of Louisville.

Upon the first trial there was a verdict for the plaintiffs for the amount sued for. That judgment, however, was reversed for errors in the instructions, and for error in permitting the plaintiff Smith to testify in his own behalf concerning a conversation with Bland, who was dead at the time of the trial.

Upon a second trial there was a verdict and judgment for the plaintiffs for $5,000.00; and the company again appeals.

1. It is insisted that appellant's motion for a directed verdict for it should have been sustained.

Upon the second trial the plaintiffs introduced a new witness, W. S. Whitesides, who testified in substance, and explicitly, that he heard the conversation between Smith and Bland, in which Bland instructed Smith and his co-indemnitors to proceed with the work of finishing the road, and to send the bill to the appellant.

Whitesides gives the circumstances of the conversation, and fully supplies the incompetent testimony of Smith given upon the first trial.

The issue being whether the company had authorized the appellees to complete the road, Whitesides' testimony was not only competent, but was sufficient to carry the case to the jury.

Appellant contends, however, that Whitesides' testimony did not relate to or support the cause of action,

because the conversation proved by him occurred after the work had been partly done. The criticism is based upon the fact that Whitesides testified that the conversation between Smith and Bland occurred either in the fall of 1912, or in the spring of the year; and, appellant contends that it occurred in the fall of the year after the work had, in a large measure, been completed. If, however, the conversation occurred in the spring of that year (which is a reasonable inference from Whitesides' testimony), it occurred before a part of the work was done. However that may be, the testimony was clearly competent; and, as it was, under any theory, sufficient to sustain a recovery for some amount, the court properly overruled appellant's motion for a peremptory instruction.

2. The most important question raised upon this appeal is one of agency. It is insisted that Bland, the appellant's state agent, was without power, in the absence of an express authority, to make the contract with Smith for the completion of the road. This question was not considered upon the former appeal, and is now presented for the first time.

It appears from the testimony of William Gaunt, Bland's surviving partner, that Bland & Gaunt were the general agents for the appellant surety company for the state of Kentucky; that as general agents they executed bonds, and appointed other agents; that they could appoint any agent they selected; that they had no authority to make settlements for losses; that immediately upon the general agency receiving notice of any loss under any bond, they communicated the fact to the home office of the company, and that the home office then either sent a special agent to adjust the loss, or instructed them to pay so much in settlement of the loss.

Reliance is put upon the printed rules of the company, which provide (a) "that all claims under this company's bond are adjusted under the direction of, and paid by check from the home office, and no agent is authorized to take any action looking to a settlement, except when specially instructed to do so by the company"; (b) "in the event of the contractor defaulting in any way, immediate notice of the same must be given to the company by the party in whose favor the bond is issued"; and (c) "that if the contractor abandon or forfeit the contract, it will be the company's right to sub-let or complete the same in accordance with the terms thereof."

It is evident that these rules have no bearing upon this case, since the company had immediate notice of Harper's default, thereby satisfying rules (b) and (c); and the question at issue is not whether the company had the right to complete the contract, but whether it exercised that right. And rule (a), which provides that all claims under the company's bond were to be adjusted under the direction of the home office, and that no agent was authorized to take any action looking to a settlement, except when specially instructed to do so by the company, applied only in cases where settlements are made and paid.

Appellant's contention that the act of the appellees in completing the Harper contract on behalf of the company constituted a settlement of a loss under the Harper bond, which could not be done by Bland, under the rules of the company, without special authority, cannot be sustained, in view of the fact that the company then stood bound as surety upon the Harper contract, and no settlement was made or money paid to any one. Franklin county, the beneficiary in the bond, was asserting no claim of loss against the company; and, no loss was settled with the county. The loss had not been incurred, and could not, possibly, have been then ascertained. In other words, no loss had occurred and no settlement was made by Bland within the meaning of those terms as used in the policy. On the contrary, the case really came within rule (c) above quoted, which provided that whenever the contractor abandoned or forfeited the contract, the company had the right to sub-let or complete the same, according to its terms.

The prohibition upon the power of the agent to settle a loss does not apply to the agent's authority to employ some one to complete a contract for the company, and thereby save it from loss.

So, the real case asserted by the appellees is, not that Bland attempted to make a contract for the settlement of a loss, but that he made a contract by which the company exercised its right to complete the work.

Whitesides having shown that Bland made the contract with Smith, the question for decision is: Did Bland as general agent for the company, aside from the rules above quoted, have the authority to make the contract with Smith, as shown by Whitesides? Since it is not shown that Bland had express authority to make the contract relied upon, it did not exist unless it was embraced within his powers as general agent for the company.

In its nature the authority of an agent to act after his appointment, like the original appointment itself, is either express or implied.

The distinction between the express and the implied authority of an agent is stated as follows, in 2 C. J., p. 576:

"Express authority, as involved in the law of agency, is that authority which the principal directly grants to the agent, and this includes, by implication, whether the agency is general or special, unless restricted to the contrary, all such powers as are proper and necessary as a means of effectuating the purposes for which the agency was created. It does not include, however, apparent authority which arises from a conscious permission by the principal of acts beyond those expressly granted, but only that which arises from those acts which he affirmatively extends to the agent.

"Implied authority is that authority which the principal intends his agent to possess, and which is proper, usual, and necessary to the exercise of the authority actually granted, or which is implied from the conduct of the principal, as from his previous course of dealing, or from his conduct under circumstances working against him an equitable estoppel. Even where the appointment of an agent has been expressly made, much of his resulting authority may be left to be implied; and, indeed, an agent acting under the most detailed power of attorney almost invariably has at least a limited implied or incidental authority as to some details inevitably omitted in drawing the power of attorney. Especially in the case of a general agent much must of necessity be left to his discretion and judgment as he is confronted with circumstances not foreseen when he was appointed, but requiring to be met in his best judgment so as to effect the principal's purpose; and extraordinary emergencies may arise in which a person who is an agent may from the very necessities of the case be justified in assuming extraordinary powers."

Mechem, in his work on Agency, states the rule as follows:

"The authority of the agent, so far as it concerns the rights of third persons, may thus be a composite matter, made up of a number of elements. It consists first, and primarily, of the powers directly and intentionally conferred by the voluntary act of the principal; second, of those incidental powers which are reasonably necessary

and proper to carry into effect the main powers conferred and which are not known to be prohibited." Sec. 282.

To the same effect, see Hurst v. Am. Asso. Limited, 105 Ky. 800; Cartmell v. Unverzaught, 21 Ky. L. R. 1282, 54 S. W. 965; Columbia Land & Min. Co. v. Tinsley, 22 Ky. L. R. 1082, 60 S. W. 10; Blood v. Herring, 22 Ky. L. R. 1727, 61 S. W. 723; Rankin v. McFarlane Carriage Co., 25 Ky. L. R. 258, 75 S. W. 221; E. T. Kenney Co. v. Anderson, 26 Ky. L. R. 367, 81 S. W. 663; Kenton Insurance Co v. Bowman, 84 Ky. 446.

From these authorities it follows that the authority of a general agent, as to third persons, is to be determined by the nature of the business; and, is *prima facie* co-extensive with its requirements.

In the case before us, Bland was appellant's general agent with power to execute bonds, which was the principal, if not the sole, business of his company in Kentucky; and, as general agent, he had the usual powers that were necessary to carry on that business. Furthermore, Smith testified that on previous occasions he had, as the Frankfort agent of the company, made settlements of losses of a similar nature, and always under instructions received from Bland & Gaunt, the general agents.

In the case at bar Bland merely exercised the company's right to have the Harper work completed; he was not attempting to settle a loss. On the contrary, he was trying to prevent the company from having to pay a loss upon a bond he had executed, and upon which the company was then liable.

As Bland had also taken the indemnifying bond, evidently without consulting the company, there was no reason why he should not further protect his company by having Smith complete the work, without compensation for his own services as superintendent; and the correspondence between Bland and his company shows that it was relying upon him to protect its interests in this instance.

Furthermore, Bland, nowhere in the correspondence, indicated any want of authority to make the agreement; he merely denied that he had made it. Bland did not tell Smith that he would submit the bill to the company, for the good reason that the cost could not (according to Smith's answer as shown by Whitesides) be then estimated; but he told Smith "to go ahead and finish the turnpike and send him the bill, and the company would pay it."

Under the authorities above cited, we are of opinion that Bland, as general agent for the company, with the express powers above stated, had the implied authority to take any usual and ordinary step that was necessary to prevent his company from sustaining a loss under its existing contract. He did no more than that in this case.

The instruction given covered the agency feature of the case; and in doing so, the second instruction given upon appellant's motion, correctly advised the jury that before it could find against the defendant by reason of a request or direction given or made by Bland to plaintiffs to complete the work, if any such request was made or direction given, they must believe from the evidence that Bland was authorized by defendant to make such request, or give such direction on defendant's behalf.

The pleadings being the same upon the second trial, and the proof substantially the same—Whitesides' competent testimony taking the place of Smith's incompetent testimony admitted upon the first trial—it only remained for the trial court to give instructions corrected in the respects indicated in the former opinion. This it did; and, under the rule that where a case has been reversed for errors in the instructions, the opinion of this court states the law of the case in subsequent trials under the same pleadings and substantially the same evidence, the trial court did not err in refusing to give the other instructions asked by the appellant. I. C. R. R. Co. v. Haynes, 144 Ky. 508; Junior Order Am. Mech. v. Ringo, 146 Ky. 602; L. & N. R. R. Co. v. Setser's Admr., 149 Ky. 162; L. & N. R. R. Co. v. Murphy, 150 Ky. 176.

Judgment affirmed.