## Young v. Bank of Sweetwater.

(Decided February 17, 1920.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Evidence—Against Decedent's Estate—Transaction With.—The word "transaction" in section 606 of the Civil Code, should not be given a narrow meaning or one that would defeat the purpose to prevent a person from testifying as to any act done or admitted to be done by a decedent. No person will be permitted to give testimony in his own behalf that will have a tendency to strengthen his claim or that will leave the impression that his demand is just, although he may not testify directly to any transaction or acts done or admitted to be done by the deceased.

2. Evidence—Against Decedent's Estate—What is a Transaction With Decedent.—Where a bank endorsed a note held by it as paid, although the endorsement was made without the knowledge or direction of the maker, a stockholder in the bank, after the death of the maker, could not explain that the endorsement was made by mistake.

3. Evidence—Against Decedent's Estate—Presumption.—Credits endorsed on a note are prima facie evidence of their payments and the payee of the note cannot testify concerning their correctness or that they were made by mistake against the estate of the maker of the note who is dead.

HENRY J. TILFORD and O'NEAL & O'NEAL for appellant.

BASKIN & VAUGHAN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL—
Affirming.

On January 5th, 1915, D. C. Young, with M. W. J. Young, as surety, executed a promissory note to the Bank of Sweetwater, Tennessee, payable in six months. D. C. Young died in July, 1917, and in February, 1918, this suit was brought by the appellee bank against M. W. J. Young, the appellant.

For defense to the note, M. W. J. Young set up that the note sued on had been satisfied on September 19, 1916, by the execution on that day of a new note in place of the original, which new note, as alleged, was accepted by the bank and the original note endorsed paid.

After the pleadings had been made up and evidence taken, the case was submitted, and from a judgment in favor of the bank this appeal is prosecuted by Young.

The correctness of the judgment depends on the question whether the note sued on was satisfied by the execution of the new note on September 19, 1916. It is admitted that on September 19, 1916, a new note for the amount of the note sued on was executed by D. C. Young, payable to the bank, and that the bank retained possession of this new note, on which there also appeared as surety the name of M. W. J. Young; it is also admitted that on September 19, 1916, the bank put on the face of the original note, with a stamp, these words: "Bank of Sweetwater, paid September 19, 1916, Sweetwater, Tennesee." The bank, however, for reasons that will be later stated, contends that the endorsement on the face of the original note and its retention of the new note did not amount to its acceptance of the new note in satisfaction of the original; on the other hand, M. W. J. Young contends that the new note was accepted in the place of the original and that the endorsement on the original note and the retention of the new note established this fact.

M. W. J. Young, in his own behalf, testified that he signed as surety for D. C. Young, who was his brother, the note dated January 5th, 1915; that D. C. Young, the principal in the note died on July 3, 1917; that he was first notified that the note sued on was unpaid on August 8, 1917, at which time payment was demanded of him.

For the bank, S. T. Jones, who was president, cashier, and also a stockholder, testified that the interest on the

note was paid every six months from the time it was due in June, 1915, up to August 28, 1917; that D. C. Young died in July, 1917; that on September 19, 1916, D. C. Young came into the bank and offered him a new note for $1,500.00, with the name of M. W. J. Young signed to the note, but he declined to accept the new note in satisfaction of the original, because the name of M. W. J. Young had not been signed by himself to the new note; that D. C. Young left the new note at the bank and promised to get another note with the name of M. W. J. Young signed to it in person, but did not do so. He further testified that when D. C. Young called at the bank on September 19, 1916, he understood that he had come for the purpose of paying the original note, and that he then went into another room in the building and got the original note and endorsed on it with a stamp the words that appear on the face of the note.

He further said that: "I stamped the note in that way by mistake. It was done in the main banking room. No one was present at the place where I was when I put the stamp on, but at other places in the bank there were some of the regular employes of the bank. Neither of the Youngs, I mean D. C. Young and M. W. J. Young, were present in the room. D. C. Young was not present and did not see me stamp those words and figures upon that note. That after stamping the note he took it back in the room where D. C. Young was when he discovered that he did not intend to pay the original note, but only the interest on it."

Dora E. Young, a lawyer at Sweetwater, Tennessee, and who was a partner of D. C. Young, testified that he paid for D. C. Young the interest, endorsed as credits, on the note in 1917; that he was executor of the estate of D. C. Young and that after the death of D. C. Young, the bank presented to him, as executor, the original note, with the stamp endorsement on it showing its payment; that it was attached to the new note executed on September 19, 1916; that the bank explained that the original note had been stamped paid by mistake, and that the new one had been retained in the expectation that another note properly signed would be received from M. W. J. Young.

Clarence E. Young testified that he was the book-keeper and assistant cashier of the Bank of Sweetwater, but not a stockholder; that the bank books showed that

no payments had been made on the original note except the interest payments endorsed on the note. It may also be here said that it does not appear that any entry of the new note dated September 19, 1916, was ever made on the bank books, nor was any interest ever credited on this note.

The evidence of S. T. Jones, the president and cashier, who was also a stockholder in the bank, as to conversations with D. C. Young was not, of course, competent, nor was his explanation of the circumstances under which he made the endorsement on the original note. He testified, as we have seen, that this endorsement was not made in the presence of, or with the knowledge of, or by the direction or consent of D. C. Young, nor does it appear that D. C. Young ever saw the endorsement or knew that it had been made; and the importance of this endorsement unexplained lies in the fact that it furnished *prima facie* evidence of the payment of the note, but of course this *prima facie* evidence would be easily overcome by the evidence of Jones if it was competent.

We had a question as to the competency of evidence like this in the case of Vannatta v. Willett's Admr., 103 Ky. 355. In that case Vannatta filed a note properly proven for $5,000.00 against the estate of Willett. On the back of the note were these endorsements: "Received on the within note $600.00, September 29, 1893." "Received interest on the within note up to September 22, 1893." Vannatta contended that these two endorsements were for the same thing, namely, the payment of the interest to September 22, 1893; that they were made by himself by his own mistake in the absence of Willett.

The court, however, holding that his evidence was not competent, under subsection 2, of section 606, of the Code, to explain the credits, said: "We are of the opinion that these credits endorsed upon the note must be held to be transactions with decedent, and concerning which appellant could not testify under the section of the Civil Code above. The mere fact that these endorsements may have been made by appellant himself, and are alleged to have been made in the absence of decedent, can not alter the case. These credits are *prima facie* evidence of the payments as against appellant and we do not understand how he could testify concerning their correctness without necessarily also testifying as to the actual payments by decedent."

To the same effect is Cornelius v. Mills, 21 K. L. R. 947; Northrip's Admr. v. Williams, 30 K. L. R. 1279.

It seems to us that there is no material difference between the evidence held incompetent in the Vannatta case and the evidence offered by Jones in this case. In the Vannatta case, the endorsement of credits on the note were held to be *prima facie* evidence of payments made, and in this case the endorsement on the note would be *prima facie* evidence that it had been paid.

It may be true that the decedent had no connection whatever with the endorsement made on the note by the bank, and that it was made without his knowledge or direction, but nevertheless it should be treated as a transaction with the decedent within the meaning of the Code. The endorsement showed that the note had been paid, and the presumption would be that it had been paid by the decedent. So that when Jones, an interested party, undertook to explain away the effect of this endorsement he was inferentially testifying to a transaction with the decedent, and concerning a matter prejudicial to the interest of the estate.

In the Northrip case, *supra,* in considering the evidence of a witness who testified that a person against whose estate she had presented a claim for services was helpless and required a great deal of attention, the court, in holding this evidence incompetent, said: "It is argued that this evidence did not relate to any verbal statement made by or transaction with or act done or omitted to be done by the deceased. In a limited sense this is correct. But this Code provision should not be given a narrow or strained construction to permit persons having claims against the estates of deceased persons to testify with reference thereto. If the language of the Code was strictly confined to statements of actual transactions with or positive acts done or omitted to be done, the reason and purpose of this Code provision would be seriously impaired, if not destroyed. No person will be permitted to give testimony in his behalf against the estate of a deceased person that will have a tendency to strengthen or make good his claim, or that will leave the impression upon the court or jury that his demand must be just and reasonable, because in substance and effect this would be testifying, although indirectly, to transactions with and acts done or omitted to be done by the deceased."

We have then the note sued on endorsed paid by the bank, thus putting on the bank the burden of overcoming the *prima facie* evidence of the payment of the note it is seeking to collect.

Now, let us see what facts and circumstances there are in the record to overthrow this presumption of payment. We find several. (1) The possession of the note by the bank is a circumstance tending to show that the note was not paid at the time the endorsement was made, as it is customary for persons who pay notes to take possession of them; (2) the entries on the books of the bank were competent evidence and these entries showed that the original note, that is the one sued on, appeared on the books of the bank without any endorsement or credits, except those credits about which there is no dispute, and this is very persuasive evidence that the original note was never paid, especially when considered in connection with the further persuasive fact that the new note was never entered on the books of the bank; (3) the bank, soon after the death of D. C. Young, demanded payment of the old note of the executor, and the executor testified that when payment was demanded, the old note, with the new one attached, was presented to him. The executor also related the statements made to him by the bank when payment was demanded, explaining how the note happened to be endorsed paid, but we do not think these statements competent; (4) M. W. J. Young admits that he signed the old note as surety, but in his evidence does not mention the new note or say that he signed or authorized his name to be signed to it, thus in effect admitting that he did not sign the new note, and this admission leaves the inference that his failure to sign it was the reason that the bank did not accept it in lieu of the old note to which his name was regularly signed. If he had signed the new note, there could scarcely be any reason assigned why the bank would not have taken it and surrendered the old note. It is also plain that the only reason why M. W. J. Young is trying to make the bank look to the new and not to the old note is because he is liable on the old and not on the new note.

On the whole case, we think the evidence, direct and circumstantial, is sufficient to overcome the presumption created by the endorsement and to establish that the bank never accepted the new note in place of the old one.

The judgment is affirmed.