# DECISIONS

## OF THE

# Court of Appeals of Kentucky

## Louisville & Nashville Railroad Company v. Burk.

(Decided October 14, 1924.)

### Appeal from Lee Circuit Court.

1. Carriers—Whether there was Sudden Jerk Held for Jury.—In action for injuries to passenger falling from train 325 feet, after train started from station, whether there was sudden jerk throwing him from steps held for jury.

2. Carriers—Passenger Going Between Coaches to Request Employee to Stop Train Not as Matter of Law Negligent.—Passenger who by reason of failure to announce station did not learn of arrival until after train had started was not, as matter of law, guilty of negligence in going between coaches to request employee to stop train, resulting in his being thrown by sudden jerk, though person to whom he spoke was not in fact employe but news butch.

3. Carriers—Instruction Predicated on Employe's Direction to Alight Held Not Authorized by Evidence.—Instruction authorizing recovery if agent or servant in charge of train told plaintiff to alight, and he went to platform and was thrown by unusual and unnecessary jerk, was erroneous, where plaintiff did not claim or testify that person with whom he talked told him to alight.

4. Carriers—Mere Failure to Announce Station Not Proximate Cause of Injury After Train Left Station.—Mere failure to announce plaintiff's station was not proximate cause of injury to plaintiff, thrown from step after train had started and was 325 feet away from station, while he was seeking trainmen to have train stopped.

5. Carriers—Proper Instructions to be Given in Action by Passenger Thrown from Step Stated.—In action for injuries to passenger

who was injured, as he claimed, when thrown by sudden jerk from steps after train had stopped at his station and had started, wherein defense was that plaintiff stepped from train, proper instructions to cover issues stated.

6. Witnesses—Party May be Contradicted as Any Other Witness— Exclusion of Question to Passenger Claiming to have been Thrown off Platform by Jerk, as to Statements, Held Error.—A party may be contradicted as any other witness, and, where plaintiff testified that station was not called and that he went on platform to request that train be stopped, and was thrown off by sudden jerk, court erred in excluding question to plaintiff whether he had not said that he went to sleep on train, and knew nothing until he became conscious in hospital.

7. Witnesses—Statement of Plaintiff as to How Injury Occurred Held Admissible as Substantative Evidence.—In action for injuries to passenger who claimed that he was thrown from platform by sudden jerk, evidence that plaintiff had stated that he went to sleep on the train, and knew nothing until he became conscious in hospital, should have been admitted as substantative evidence.

8. Depositions—Too Late on Trial to Object that Question in Deposition Leading.—It was too late on trial to object that question answered in deposition was leading, in view of Civil Code of Practice, section 587.

9. Witnesses—Attorney should Not Ask Leading Questions and Reiterate Questions that Court Adjudged Incompetent.—Attorney should not ask leading questions and reiterate questions that court has adjudged incompetent.

10. Carriers—Evidence that Conductor did Not Take up Hat Check Held Immaterial in Action for Injuries to Passenger.—In action for injuries to passenger stepping or falling from platform after train had started from plaintiff's destination, which station plaintiff claimed had not been called, evidence that conductor had not taken up plaintiff's hat check marking his destination was immaterial and properly excluded.

WOODWARD & WARFIELD, HUNT, NORTHCUTT & BUSH, and ROSE & STAMPER for appellant.

J. M. McDANIEL and FRED P. CALDWELL for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS— Reversing.

Appellee, a building contractor, 44 years of age, was a passenger on appellant's train *en route* to Beattyville, Ky., and riding in the ladies' coach. It reached and stopped at that point about 10:20 p. m. He claims that no announcement was made of the station by the trainmen; that not knowing of its arrival at that place he re-

mained in his seat until after it started, when he heard some one on the outside mention "Beattyville" and he started to find a trainman to stop the train, as it was moving too fast for him to alight. At the front door he met the flagman coming from the coach ahead, and asked him if it was Beattyville, and he replied that it was, and he then told him he wanted to get off, and the flagman asked him, "Why don't you get off?" or "Why didn't you get off?" He then asked the flagman to stop the train that he might do so. During this colloquy he stepped to the side of the flagman on the front platform, and the latter entered the coach, as he thought for the purpose of stopping the train; at that juncture the train gave a sudden and unnecessary jeck which threw him from the platform to the ground. He remembers catching the railing, but nothing further. He struck his head, receiving several fractures of the skull, and other serious personal injuries.

In a suit he recovered $10,000.00 damages, and the company has appealed. It is earnestly insisted that a peremptory instruction should have been given. Considering this, aside from the appellee's statements above, a young lady passenger testifies that she got off at Beattyville, but did not hear the station announced. She was engaged in conversation as the train approached the station.

Several saw appellee after he fell, and fixed the place at a point about 325 feet from the station. However, only one of them, a railroad agent, witnessed the occurrence. He states that he was standing within twelve or fifteen feet of this place, and saw a man on the platform between the ladies' coach and smoker walk down off the platform onto the steps, and, as he thinks, stepped off.

One witness boarded the front end of the ladies' coach after the train had started, and went back through the coach hunting a doctor, and got off at the rear end. He says the train was starting rapidly, and that as he boarded the train he heard some one at the door of the ladies' coach ask if this was Beattyville, and another person coming across the coupling from the smoker answer "Yes, sir,' but he did not take time to observe either person.

None of the witnesses except the plaintiff observed any jerk, lurch or unusual movement of the train. The flagman claims that he announced the station of Beatty-

ville three times as the train approached that station; that he got off at the front end of the ladies' coach and assisted with the passengers, and as the train moved out got on at the rear end, and that he had no conversation with the plaintiff; on that occasion he was wearing a cap, but no uniform; that there was on the train the conductor, himself and the news butch, the latter of whom wore a uniform. The news butch did not testify, and no other witnesses testify as to hearing the station called in the ladies' coach. On cross-examination plaintiff admits the person with whom he talked was wearing a uniform.

The conductor was introduced by the plaintiff, but knew nothing of the accident, and did not learn of it until he received a wire at a station forty miles away. He also testifies that the flagman was not wearing a uniform at the time.

The engineer knew nothing of the accident, and testifies there was no unusual movement of the train. He and several others also testify that a sudden start will jerk a stationary train, and that jerks will sometimes occur in taking up the slack between the cars as the train is starting, but that in running a distance of 325 feet all the slack will be taken up, and that in the operation of a train such as this, if additional steam pressure was applied, it would only accelerate the movement or cause the drivers to slip, but would not produce a jerk; though they admit that a jerk might be produced by a sudden reversal of the engine, or the application and withdrawal of the air brakes. From this it is argued that the defendant was entitled to a directed verdict. First, because it was a physical impossibility for a jerk to have occurred as claimed by plaintiff, and second, because if the plaintiff had any conversation with anyone it was with the news butch, who was shown not to be an employe of the company, and for whose actions it would not be liable.

We cannot agree to either proposition. If it should be assumed that in the movement of the train after the slack is taken up it cannot be jerked by increased steam pressure, it is admitted that a jerk may be produced by an inadvertent application of the brakes, or by a reversal, hence, it was not impossible even in this view of the case for the jerk to have occurred. Nor is it material as to whether the appellee talked to the flagman or news butch. If by reason of the failure to announce the station he did not learn of his arrival thereat until after the

train had started, he had a right to request an employe to stop the train. We cannot say as a matter of law that he would be guilty of negligence in going between the coaches for that purpose, and if under such circumstances he was by a negligent jerk of the train thrown therefrom and injured, a triable issue was formed, and this does not depend upon the conversation being with an agent. We conclude that the court properly refused to give a peremptory instruction for the defendant.

The court gave nine instructions, five on motion of plaintiff and four on motion of defendant.

The first defined the status and duties of the parties. The second, third and fourth read:

"(2) If you believe from the evidence that said W. H. Burk was a passenger on the train as set out in instruction No. 1, and that as the train drew into Beattyville, its agents and servants in charge of said train, or any of them, told W. H. Burk to alight from said train and that he went to the platform of said car and while there the train running at a low rate of speed was negligently caused to make a sudden, unusual and unnecessary and violent jerk forward of sufficient violence to indicate a want of the highest degree of care in the operation of said train with such force that he was thrown or caused to fall from said platform while he was exercising ordinary care for his own safety as set out in instruction No. 3, you will find for the plaintiff."

"(3) The court instructs the jury that it was the duty of the defendant, its agents and servants in charge of defendant's passenger train in question to announce twice in the car in which plaintiff was riding, the station of Beattyville a reasonably sufficient time before said train reached Beattyville, and if you believe from the evidence that said agents and servants in charge of said train failed to announce twice the station of Beattyville in said car in which plaintiff was riding within a reasonable time before its arrival at the station and that the plaintiff by reason of said failure to announce said station was delayed in getting off the train and by reason of the failure to announce the station did receive the injuries set out in his petition, then the jury should find for the plaintiff."

"(4) If the jury believe that the plaintiff was injured by reason of defendant's failure, if any, to announce the station of Beattyville as set out in instruction No. 3, or did by reason of the negligence of defendant, if any, in causing him to be thrown or caused to fall from said train by a sudden, unusual, unnecessary jerk as set out in instruction No. 2, if he was so thrown or caused to fall, and that by reason of either or both he was injured  .  .  .  they will find," &c.

It will be observed that the second instruction authorized a recovery if an agent or servant in charge of the train told him to alight, and that he went to the platform and was thrown therefrom, by an unusual and unnecessary jerk.

Plaintiff does not claim that the person with whom he talked told him to alight, so that if it be conceded that person was a flagman, the evidence would not authorize this instruction. The third instruction authorized a recovery if the agents of the train failed to announce the station twice in the coach in which plaintiff was riding, and he received his injuries by reason of such failure. Under these facts it cannot be contended that the mere failure to announce the station was the proximate cause of the injury, hence this instruction was erroneous.

Number four was intended as a measure of damage instruction, but it emphasized the above errors by authorizing a recovery for either a failure to announce the station as set out in instruction No. 3, or for an injury occasioned by a negligent jerk as set out in instruction No. 2, and these obvious errors could not be cured by the instructions given on motion of defendant, even though they were subject to the criticism claimed by plaintiff, and this renders further reference to them unnecessary.

The real issues are very simple and can be submitted in concrete instructions. Plaintiff predicates his action on the failure to announce the station, causing him to be delayed in getting off the train until after it had left the station, and that his injuries were caused by a negligent jerk of the train while he was seeking its stoppage, and admits that it was going too fast for him to alight in safety.

On the other hand, while controverting this theory, the defendant's theory and evidence is, that he volun-

tarily stepped off the train under the conditions named, and he denies this.

To meet both views the court should instruct the jury: It was the duty of defendant's agents in charge of the train in question to announce the station of Beattyville twice in the car in which plaintiff was riding, within a reasonable time before its arrival at that station, and in such a manner that the persons in the car having ordinary hearing and paying ordinary attention would hear it, and if you believe from the evidence that they failed to discharge that duty, and by reason thereof plaintiff did not learn of the arrival of the train at that station until after it had started to leave, and thereupon sought an agent in charge to have the train stopped, for him to alight, and in so doing and while in the exercise of ordinary care for his own safety, went upon the platform between the cars, and by an unusual and unnecessary jerk of the train was thrown therefrom and injured, the law is for the plaintiff and you should so find. Unless you so believe, you should find for the defendant.

No. 2. Although you may believe from the evidence that the defendant's servants in charge of the train failed to properly announce the station of Beattyville as set out in the first instruction and that thereby the plaintiff did not learn of the presence of said station until after it was passed, yet if you shall further believe from the evidence that he voluntarily stepped or undertook to alight therefrom and thereby either fell or was thrown to the ground and injured, the law is for the defendant and you should so find.

These, with the instructions defining ordinary care, and the measure of damages, should constitute the whole law of the case.

The defendant had taken a deposition of J. I. Dempsey in which he testified that in the presence of his wife at his home in Hazard, about a week after the plaintiff came home from the hospital, Mr. Burk told him, "that he, Burk, purchased a ticket and boarded a train, giving his ticket to the conductor who placed a hat check in his cap which he was wearing, that he set down upon the train, went to sleep and that he knew nothing from that time until he became conscious or came to himself in a hospital in Lexington, Ky., possibly two weeks after the accident."

On his direct examination plaintiff was asked whether or not he made that statement under the circum-

stances indicated, and objection was sustained on the ground that the evidence was substantive and could not form the basis of a contradiction. Afterwards on the introduction of its evidence defendant offered this deposition on its behalf. Objection was sustained to this also, the ground not appearing.

A party may be contradicted as any other witness and the court erred in sustaining the objection in the first instance. Also it was competent as substantive evidence, and the deposition should have been admitted when offered in behalf of defendant. Perhaps the latter ruling of the court was based on the fact that the question asked in the deposition was a leading one. However, no exceptions were filed to the deposition before the beginning of the trial, and this question, though leading in form, was otherwise both competent and relevant. It was then too late to object to the form of the question. Section 587, Civil Code.

Complaint is made of the misconduct of attorney for plaintiff in asking leading questions, and reiterating questions that the court had adjudged incompetent. Space forbids setting those out in detail, though it may be said there is some ground for criticism, and in another trial this should be avoided.

When plaintiff surrendered his ticket to the conductor on the train he was given the customary hat check on which the conductor had marked his destination. He claims that this was not taken up, and made a persistent effort to prove that fact. That evidence was immaterial. Such checks are usually taken up, but not infrequently they are left in the passenger's hat or thrown upon the floor. Certainly the company does not owe to the passenger the duty of taking them up, and a failure to do so in no wise proves a failure to announce the station.

Wherefore, the judgment is reversed and cause remanded for proceedings consistent with this opinion.