## Burk v. Louisville & Nashville Railroad Company.

(Decided October 22, 1926.)

(Rehearing Denied, with Modification April 15, 1927.)

### Appeal from Lee Circuit Court.

1. Witnesses.—Every witness offered should be allowed to testify, unless his exclusion is clearly required by statute.
2. Witnesses.—Where, at time of trial of personal injury suit against railroad, railroad's engineer was dead, plaintiff's testimony as to

act done or omitted by engineer, being admissible under Civil Code of Practice, sections 605, 606, was not inadmissible under section 606, subsec. 2; defendant railroad having been constructively present in person of conductor, its vice principal at scene of accident.

J. MOTT McDANIEL for appellant.

WOODWARD, WARFIELD & HOBSON, HUNT, NORTHCUTT & BUSH, ROSE & STAMPER and ASHBY M. WARREN for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

The plaintiff was unsuccessful, and has appealed. This is the second appeal of this case, and the facts out of which this litigation grew are well stated in the case of L. & N. R. R. Co. v. Burk, 207 Ky. 1, 268 S. W. 844. Between the time of the former trial and this one, the engineer, Walter Gilson, died, and, when the plaintiff, Burk, offered to testify about a jerk of the train, which, as he said threw him off his feet, and caused him to fall and sustain the injuries he complains of, the defendant objected, but the court overruled the objection, and permitted the plaintiff to testify. The basis of the defendant's objection was that, the engineer being dead, the plaintiff could not now testify for himself about any act done or omitted to be done, by the engineer. The court overruled this objection, probably because it was not shown that a jerk of this train might not have resulted from the act of some one other than the engineer, but, when the court submitted the case to the jury, among other instructions, he gave the following:

> "The court further instructs the jury that they will not consider any testimony of the plaintiff which conduces to show, if his testimony does conduce to show, or does show, that there was any jerk or movement of the train by the engineer, Walter Gilson, nor any jerk or movement of the train that was made or caused by the said engineer, and although the jury may believe from the evidence that there was an unusual or unnecessary jerk or movement of the train which threw plaintiff therefrom and injured him, still, if they shall further believe from the evidence that said jerk or movement, if any there was, was caused by any act done or omitted to be done by said engineer, they will find for the defendant."

So strenuously has this instruction been both attacked and defended that we have thought best to set forth with some elaboration the reasons we do not approve it. Formerly the competency of witnesses was a subject that fairly bristled with difficulties. Witnesses were not allowed to testify for a great number of reasons, ranging from their religious views to their interest in the controversy. The theory of the common law was to admit to the witness stand only those presumably honest, appreciating the sanctity of an oath, unaffected as a party by the result, and free from any temptations of interest. While the great jurists of the common law never wearied in their encomiums upon the value of the right of trial by jury, there is, after all, perceptible in the rules of evidence by them wrought out a profound distrust of the capacity of the jurors to perform their functions. They were afraid to trust the intelligence of the jurors, evidently believing jurors could not discriminate between the credibility of an infamous or interested witness and one against whom no such objection existed. Many miscarriages of justice necessarily resulted from the wholesale suppression of evidence which the application of that system of rules required. The courts began to disfavor it, and sought by exceptions and evasions to mitigate the rigor of its application. See Lord Mansfield's opinion in Walton v. Shelley, 1 T. R. 300, and the opinion of Lord Kenyon in Bent v. Baker, 3 T. R. 27. Then came the powerful, sarcastic attacks on the system by Jeremy Bentham, which was followed by Lord Brougham's work, and as a result there came in England a revision. See St. 6, 7 Vict. c. 85. This reform was soon followed in this country, and in our own state by section 605 of the Civil Code all of these disqualifications were swept away, except those preserved by section 606. That any vestige of the old system was left seems to be much regretted by our great writers upon the subject of evidence. See Greenleaf on Evidence, c. 23; Wharton on Evidence, c. 8; Wigmore on Evidence, c. 23; Jones on Evidence, c. 20.

The evident wishes of these great men do not make the law, but when we consider what they have said, and remember that each of the acts of the legislative branch of our government upon this subject has been an enabling act, we are persuaded that every witness offered should be allowed to testify, unless his exclusion is clearly required by our statutes. We will, with the foregoing in mind, return to our consideration of this instruction.

The defendant relies upon the case of I. C. R. R. Co. v. Martin (Ky.) 110 S. W. 815, 33 Ky. Law Rep. 666, wherein we said:

"The engineer being dead, the plaintiff cannot testify as to anything the engineer did or omitted to do, as under section 606 of the Civil Code of Practice no person may testify for himself concerning any act done or omitted to be done by one who is dead, and it has been repeatedly held that, where the agent with whom a transaction occurred is dead, the other party may not testify for himself as to the transaction."

Subsection 2 of section 606 of the Civil Code upon which the defendant relies for the exclusion of this evidence is this:

"Subject to the provisions of subsection 7 of this section no person shall testify for himself concerning any verbal statement of, or any transaction with, or any act done or omitted to be done by, an infant under fourteen years of age, or by one who is of unsound mind or dead when the testimony is offered to be given except for the purpose, and to the extent, of affecting one who is living, and who, when over fourteen years of age and of sound mind, heard such statement, or was present when such transaction took place, or when such act was done or omitted, unless. . . . . ."

The defendant is a corporation. It is an artificial person. Being such, it could not be corporeally present; for it is without body. It acts through agents. It was so acting on this occasion. It had on this train a conductor, an engineer, a fireman, and perhaps other agents representing it. Its conductor, Fred A. Bocook, had charge of this train—was on it at the time Burk claims he was injured. Neither he nor Burk was in the cab of the engine. Neither of them can know just what the engineer did or did not do, but certainly Bocook and defendant's other agents on this train had equal opportunity with Burk to know whether or not there was a jerk of the train. The jury is permitted to hear evidence in order that it may from it discover the truth. To exclude the evidence of Burk amounts to a finding that, because of his interest, he will not tell the truth. By sec-

tions 605 and 606 of the Civil Code he is made a competent witness for himself to affect the defendant, if it was present when the act complained of occurred, even though the one whose agency may have caused it to happen is dead.

If this railroad and this train had been the property of Bocook, and this suit was against Bocook, no one would contend this evidence was incompetent, because the engineer was dead. Why should the defendant be in a better position? The defendant makes here the argument usually made in interested survivor cases. It contends that, because death has closed the mouth of its engineer, Gilson, the law should close the mouth of the plaintiff. This argument assumes that to permit Burk to testify now, when Gilson is dead, will not only subject him to an irresistible temptation to perjury, but will also endow him with such consummate skill in lying that opposing counsel will be powerless to expose him, and court and jury will be unable to evaluate his testimony. We must keep in mind, however, that this is not a suit against the estate of the engineer, but a suit against the railroad company. The defendant has the right to cross-examine the plaintiff; it has his evidence on the former trial, and for that matter it has the evidence of the engineer on that trial, which it can use if it so desires. This does not mean that, because the engineer testified on the former trial, Burk is for that reason a competent witness for himself on this one. That is Burk's contention based on the case of Foley v. Dillon, 105 S. W. 461, 32 Ky. Law Rep. 222; but we did not so hold in that case, and in Harpending's Ex'rs v. Daniel, 80 Ky. 449, 4 Ky. Law Rep. 330, we expressly held to the contrary. Of course, if the defendant had in this trial read the evidence of this engineer, taken on the former trial, Burk could testify thereafter; but Burk cannot compel the defendant to read it, and he would not be a competent witness on this trial until the defendant did read it, if it were not for the fact that the defendant was, through its conductor, present at the time Burk claims he was injured.

We have re-examined the case of I. C. R. Co. v. Martin, 110 S. W. 815, 33 Ky. Law Rep. 666, upon which the defendant relies. In that case Martin's team was frightened by the engineer's blowing the whistle. Martin was testifying to something that happened there on the engine, that the engineer was looking at him, saw him, saw his peril, and continued to blow his whistle. Mani-

festly the conductor in that case was not in as good a
position as Martin to testify about what happened where
Martin was. The defendant in that case was not present
through its conductor; for, being back in the train, away
from the engineer and Martin, who was by the engine,
he had not an equal opportunity with Martin to know and
testify about what happened there on that engine. There
is a different situation presented here.

The defendant has cited a number of other cases
which it insists support its contention, but which do not
do so. We shall briefly set out the reasons they do not.
Hardin's Adm'r v. Taylor, 78 Ky. 593; Harpending's
Ex'r v. Daniel, 80 Ky. 449; Geo. T. Stagg Co. v. E. H.
Taylor, Jr., & Sons, 113 Ky. 709, 68 S. W. 862, 24 Ky. Law
Rep. 495; Cunningham's Adm'r v. Speagle, 106 Ky. 278,
20 Ky. Law Rep. 1833, 50 S. W. 244; Bastin v. Givens'
Adm'r, 170 Ky. 201, 185 S. W. 835; Bagby's Adm'r v.
Am. Surety Co., 161 Ky. 78, 170 S. W. 492—all are cases
wherein the party whose evidence was held incompetent
was testifying for himself against some one who was dead
and to affect adversely the estate of the deceased.

Hurry v. Kline, 93 Ky. 358, 20 S. W. 277, 14 Ky. Law
Rep. 330; Young v. Bank of Sweetwater, 187 Ky. 71, 218
S. W. 463; Anderson v. L. & N. R. Co., 134 Ky. 343, 120
S. W. 298, 20 Ann. Cas. 920; Apperson's Ex'x v. Ex-
change Bank of Ky., 10 S. W. 801, 10 Ky. Law Rep. 943;
Mutual Life Ins. Co. of Ky. v. O'Neil, 116 Ky. 742, 76 S.
W. 839, 25 Ky. Law Rep. 983; Title Guaranty & Surety
Co. v. Hay, 165 Ky. 76, 176 S. W. 957; U. S. Health &
Accident Ins. Co. v. Jolly (Ky.) 118 S. W. 281; L. & N. R.
Co. v. Horton, 187 Ky. 617, 219 S. W. 1084; Equitable
Life Assur. Society v. Bailey, 203 Ky. 339, 262 S. W. 280;
Ky. Util. Co. v. McCarty's Adm'r, 169 Ky. 38, 183 S. W.
237—are all cases in which the estate of the deceased
was not by the proffered evidence adversely affected, but
in which some person offered to testify for himself con-
cerning some verbal statement of, transaction with, or
some act done or omitted by some one then dead, in an
action affecting some one living; but in none of these
cases was it shown that the living person, who would be
adversely affected by the evidence, was present, in person
or by agent, when such transaction took place, such state-
ment was made, or when such act was done or omitted.
For that reason, in those cases, the proffered testimony
was inadmissible; but here, where the defendant was
present by its conductor, who was at least its vice prin-

cipal, the evidence of Burk in his own behalf was admissible.

The court erred in giving instruction 5, and for that reason this judgment is reversed, and this cause is remanded for a new trial consistent with this opinion.

Whole court sitting.